# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ADAMS OFFSHORE, LTD.,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 09-0378-WS-B |
| ) | |
| **CON-DIVE, LLC, et al.,** ) | |
| ) | |
|     **Defendants.** ) | |

## ORDER

This matter is before the Court on the plaintiff's motion for interlocutory sale. (Doc. 97). The plaintiffs in intervention join in the motion. (Docs. 99, 100, 102), which defendant Oceanografia S.A. de C.V. ("OSA") opposes. The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 97, 103, 106, 107),[1] and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be denied.

The property at issue is a saturation and diving system ("the Equipment"), which has been removed from a vessel and is being stored on shore. A court "may order" interlocutory sale of attached property "if" the property "is perishable, or liable to deterioration, decay, or injury by being detained," or "the expense of keeping the property is excessive or disproportionate," or "there is an unreasonable delay in securing release of the property." Supplemental Admiralty Rule E(9)(a)(i). The plaintiff focuses on the expense of keeping the property.

The Equipment was attached on June 30, 2009. (Doc. 24). A week later, the owner of the vessel on which the Equipment was located moved to have the Equipment removed so that the vessel could resume her duties. (Doc. 13). This motion was granted

---

[1] OSA's motion for leave to file a sur-reply, (Doc. 107), which has drawn no objection, is **granted**.

on July 24. (Doc. 52). At the plaintiff's request, (Doc. 2 at 1), the Marshal was appointed custodian. (Doc. 9). On September 10, the plaintiff moved to appoint a substitute custodian, (Doc. 73), which motion was granted, following briefing, on September 22. (Doc. 81). The present motion was filed December 23 and did not become ripe until January 15. (Doc. 98).

The plaintiff represents that it expended approximately $193,000 to have the Equipment removed from the vessel and placed in storage. Counting Marshal's fees and fees of the substitute custodian, the plaintiff states it has spent over $210,000 through December 31. (Doc. 97 at 4). Going forward (indeed, beginning September 2009), the monthly cost is a stable $5,092. (*Id.*; Doc. 106, Exhibit A at 3).

The plaintiff does not explain the relevance of its sunk costs, incurred before it moved for interlocutory sale, in determining whether the expense is excessive or disproportionate. Certainly no order of sale can recoup the plaintiff's past expenditures. Absent authority or explanation, which the plaintiff does not provide, the Court limits its consideration to the future expenses of keeping the property.

As noted, the plaintiff's monthly expense is $5,092. Compared to the cases on which the plaintiff relies — in which monthly expenses were $17,000 (thirty years ago), $45,000 and $130,000 — this is a mere pittance. The plaintiff has not shown its expense to be excessive.

The plaintiff does not argue that the expense is currently disproportionate, but it does suggest it "would become" so by the time of trial. (Doc. 97 at 5). Trial is set for November 2010, (Doc. 91), so only nine or ten months of expense, or about $51,000, is at issue.[2] Given the plaintiff's admission that even the forced liquidation value of the Equipment is at least $2,500,000, (Doc. 106 at 7.), expenses of $51,000 (or barely 2%)

---

[2]During the significant amount of time required to advertise a sale, conduct it, and confirm it, the plaintiff would continue to accrue expenses even were its motion to be granted.

-2-

cannot easily be called disproportionate, and the plaintiff identifies no authority supporting a contrary conclusion.

To pad its unimpressive figures, the plaintiff speculates that the Equipment "may" require additional maintenance or other services this year and notes its steadily increasing attorney's fees. (Doc. 97 at 4). The plaintiff has not shown the amount of its attorney's fees to be relevant, and mere speculation about additional expenses is insufficient to meet its burden. Nor has the plaintiff attempted to quantify either.

Finally, the plaintiff touches lightly on unreasonable delay, asserting that OSA's failure to attempt providing security or obtaining release constitutes unreasonable delay but offering no analysis or authority in support of its position. (Doc. 97 at 6). When challenged on this score by OSA, the plaintiff in its reply brief for the first time supplied the support absent from its motion and principal brief. This is improper, because district courts, including this one, ordinarily do not consider arguments raised for the first time on reply.[3] It is true that the plaintiff asserted unreasonable delay in its opening brief, but it was not at liberty simply to posit such delay and postpone any discussion or support of its position until its reply brief. Nevertheless, because OSA has requested and received permission to file a sur-reply, the Court does not reject the plaintiff's argument as tardy.

As noted, the Equipment was attached on June 30. It does not appear that returns of service were ever filed, but OSA filed a claim on July 15 and so was aware of the attachment by that date. (Doc. 25). Although OSA has stated several times that it intends to file a motion to vacate the attachment, (Doc. 88, Exhibit B at 1; Doc. 103 at 10), it has yet to do so. The plaintiff's cases indicate that six or seven months without any effort to obtain release of the attached property can support a finding of unreasonable delay.

OSA defends its delay as reasonable because posting a bond to obtain release of

---

[3]*See Park City Water Authority v. North Fork Apartments, L.P.*, 2009 WL 4898354 at *1 n.2 (S.D. Ala. 2009) (citing cases from over 40 districts applying the rule in 2009 alone).

the Equipment would correspondingly reduce the bonding capacity it needs to bid successfully on Pemex projects. (Doc. 103 at 9). The plaintiff does not dispute that concerns over bonding capacity are a relevant consideration in measuring the reasonableness vel non of delay under Rule E. Instead, it asserts that, to the extent OSA's bonding capacity is questionable, it is a result of its failure to pay its debts to the plaintiff, the plaintiffs in intervention, and others. (Doc.106 at 4). The plaintiff provides no evidence that OSA's bonding capacity has been adversely affected by these lawsuits but, even if this is so, it does not negate the adverse effects on OSA's ability to obtain contracts were it post security for the Equipment. On the inadequate briefing of both parties, the plaintiff, as the party bearing the burden, must lose.

The plaintiff acknowledges that, even were the Court to find excessive or disproportionate expense or unreasonable delay, such a finding would not require it to grant the plaintiff's motion but only allow it to do so in the exercise of its discretion. (Doc. 106 at 3). The Court discerns several reasons why it would not exercise its discretion in favor of an interlocutory sale even had the plaintiff met its initial burden.

First, the plaintiff's cited cases did not approve an interlocutory sale based exclusively on the owner's delay in seeking release. Instead, they relied also on either the excessive or disproportionate expense of keeping the property, the deteriorating condition of the property, or both.[4] Second, the potential gain to the plaintiff of granting its motion (the saving of approximately $51,000) is disproportionate to the potential loss to OSA. By the plaintiff's admission, the fair market value of the Equipment is $4.7 million, while the forced liquidation value is only $2.75 million. (Doc. 97 at 5). Thus, were the sale to occur and the Court later to determine that attachment was wrongful, or that the plaintiff's

---

[4]Only *Silver Star Enterprises, Inc. v. M/V Saramacca*, 19 F.3d 1008 (5th Cir. 1994), in which the delay exceeded seven months, did not expressly rely on an additional Rule E(9)(a)(i) factor. The Court did not rule that an interlocutory sale was indicated but only that it was permissible. *Id*. at 1014.

case against OSA is invalid, OSA would have lost almost $2 million.[5] The plaintiff insists that resolution of the merits is not required in determining whether the Rule E(9)(a)(i) predicate to interlocutory sale is satisfied, (Doc. 97 at 3-4), but it does not suggest that the merits are irrelevant to a Court's exercise of its discretion once that predicate is established. When, as here, the potential damage to the owner from an interlocutory sale is grossly disproportionate to the potential savings to the plaintiff, the Court concludes that the plaintiff should demonstrate a significant likelihood of success on the merits before an interlocutory sale is granted. The plaintiff, however, has attempted no such showing.

Instead, the plaintiff argues that unidentified parties of an unspecified number have contacted it since the instant motion was filed in order to express their interest in bidding on the Equipment. (Doc. 106 at 7). Although the plaintiff speculates that this interest may wane before trial, (*id*. at 2), it offers no evidentiary basis for believing this a serious possibility.

In summary, the plaintiff has not met its burden of showing that one or more of the essential predicates to an interlocutory sale exists. Even had it done so, the plaintiff has not provided grounds that would cause the Court to exercise its discretion in favor of ordering an interlocutory sale.

For the reasons set forth above, the motion for interlocutory sale is **denied**.[6]

DONE and ORDERED this 1st day of February, 2010.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5] The plaintiff later lowered these figures to $4.25 million and $2.5 million, respectively, (Doc. 106 at 7), but even they expose OSA to a potential $1.75 million loss.

[6] Blake Marine Group's motion to require filing of appraisal or other documents on which minimum sales price request is based, (Doc. 101), is **denied as moot**.