IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ADAMS OFFSHORE, LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 09-0378-WS-B |
| | ) |
| CON-DIVE, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on the motions of defendant Oceanografia S.A. de C.V. ("OSA") to vacate attachment. (Docs. 194, 196, 197). The parties have submitted briefing and evidentiary materials in support of their respective positions, (Docs. 193, 195, 198, 207-10, 220-21), and the motions are ripe for resolution.[1] After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motions to vacate are due to be granted.

The sorry story of how OSA's saturation diving system and related items ("the Equipment") came to be in this district is recounted elsewhere. *McDermott Gulf Operating Co. v. Con-Dive, LLC*, 2009 WL 1537871 (S.D. Ala. 2009). In short, the Equipment was aboard a vessel owned by McDermott lying in Mexican waters. When McDermott refused to surrender the Equipment to OSA, OSA filed a criminal complaint, which triggered a government investigation. A Mexican district attorney boarded the vessel and ordered McDermott to transfer the Equipment to another vessel pending investigation. McDermott not only refused to comply with this lawful order but affirmatively prevented removal from being accomplished. McDermott did not challenge the order administratively or judicially but simply ignored it and sailed the vessel to

---

[1] OSA's motions for oral argument, (Docs. 222-24), are denied. *See* Local Rule 7.3.

Mobile in order to arrest and attach the Equipment here. On OSA's motion to vacate, the Court found these facts and ruled that they furnished grounds for an equitable vacatur of the attachment. *Id*. at *3-6.[2] The Eleventh Circuit affirmed, holding that the Court had power to vacate attachment on equitable grounds and did not abuse its discretion in doing so. *McDermott Gulf Operating Co. v. Con-Dive, LLC*, 371 Fed. Appx. 67 (11th Cir. 2010).

The Court's order vacating attachment was entered on May 29, 2009. Plaintiff Adams Offshore, Ltd. ("Adams") filed this action on June 25, 2009 and sought attachment of the Equipment. The Equipment was still in the district because McDermott's motion to stay the Court's vacatur order pending appeal was under consideration and the vacatur order was temporarily stayed pending resolution of the motion to stay. The Court issued Adams' requested order of maritime attachment on Friday, June 26 and its order denying McDermott's motion for stay pending appeal on Monday, June 29. The Marshal perfected the attachment the next day. Intervenor Blake Marine Group ("Blake") filed its complaint in intervention, including Rule B attachment, on July 14, and intervenor Cashman Equipment Corporation ("Cashman") followed suit the next day. OSA seeks to vacate the attachments of all three (collectively, "the Plaintiffs").

OSA's motions are based on a number of grounds, but one is dispositive. As noted, a court has power to vacate an otherwise valid attachment on equitable grounds, and the Court's vacatur of McDermott's attachment on such grounds has already been upheld on appeal. As OSA notes, the inequitable history related above has not been erased, and the Plaintiffs seek to profit by it. The Plaintiffs respond that they are not personally responsible for McDermott's conduct in absconding from Mexico with the Equipment unlawfully aboard. This is correct, as OSA acknowledges, but it misses the point.

---

[2] The Court vacated the arrest of the Equipment because McDermott had no maritime lien. *Id*. at *6-7.

The salient facts are these: (1) OSA did not direct, or consent to, the Equipment's entry in this district; (2) on the contrary, OSA obtained a lawful Mexican order requiring that its property not be taken from Mexico but relinquished to the authorities; (3) McDermott violated a direct government order by departing with the Equipment with the purpose of attaching it in this district; (4) the Equipment entered the district only because of this patently inequitable conduct; (5) the Plaintiffs were aware of the Equipment's presence in the district and thus were also necessarily aware of McDermott's lawsuit and this Court's order vacating the attachment as inequitable; and (6) the Plaintiffs attached the Equipment before OSA had any opportunity to remove the Equipment from the district.[3]

There are thus three parts to the equitable history of the attachments in this case. First, they were made possible only by the grossly inequitable conduct of McDermott. Second, neither the passage of time nor any other circumstance broke the causal connection between McDermott's inequitable conduct and the Plaintiffs' attachment.[4] Third, the Plaintiffs did not attach the Equipment in ignorance of its history but with full awareness that the Court had already condemned McDermott's attachment as inequitable.

Under these circumstances, the Plaintiffs' own conduct was itself an inequitable attempt to claim for themselves the benefit of McDermott's inequitable conduct. That is, they are not being held responsible for the inequitable conduct of McDermott but for their own inequitable conduct in deliberately seeking to profit by McDermott's known inequitable conduct. There is no meaningful difference between their position and that of one who knowingly receives stolen goods and then claims the right to keep the property

---

[3] It required several weeks after Adams' attachment just to have the Equipment offloaded from McDermott's vessel. Here, the Court's order lifting the stay of the vacatur was entered at 3:36 p.m. on June 29, and the Marshal served the order of attachment at 10:35 a.m. the next morning.

[4] Had, for example, OSA allowed the Equipment to remain in the district for months after McDermott's attachment was vacated, its own lack of diligence in removing the Equipment might weaken or break the causal chain.

because, after all, he was not the thief. No coherent scheme of equity justifies such a result, and the Plaintiffs suggest none.

Adams argues that, even if equitable grounds for vacatur exist, the Court has discretion not to vacate attachment if the balance of the equities favor maintaining the attachment. It advances two reasons the equities counsel retention of the attachment: (1) OSA has obstructed discovery, including Adams' investigation of OSA's relation with the entities that actually owe Adams money; and (2) the Equipment may be the only security Adams can obtain to satisfy any judgment against OSA.

The problem with Adams' first reason is that, absent the attachment, the Plaintiffs could not be suing OSA here to begin with, and Adams has not explained how any discovery abuse by OSA in a lawsuit that should never have been brought somehow justifies the continuation of that improperly instituted lawsuit. Adams might as well say that a kidnapper is justified in continuing to hold his victim if the victim steals from him.

Assuming without deciding that Adams' second reason could ever weigh in favor of sustaining an inequitable attachment, it does not carry the day here. First, Adams has offered no evidence that, without the Equipment, any judgment it receives will be unenforceable, and the Court will not indulge any such assumption without evidence to support it.[5] Second, any need Adams has for security does not justify its inequitable conduct as described above, much less shift the equities in its favor.

In a related vein, Cashman suggests that OSA is precluded from receiving equitable vacatur because it does not have clean hands. The only dirt Cashman identifies is OSA's failure to pay what it owes or return Cashman's barge. If true, Cashman presumably has a claim for breach of contract (which it has asserted in its complaint), but

---

[5] In seeking a stay pending appeal, McDermott argued that it would suffer irreparable injury absent a stay because OSA "has demonstrated an inability to cover its outstanding debts" – the same ipse dixit on which Adams relies. The Court noted that "[t]he mere fact that OSA has not paid does not mean that it cannot pay," and it noted evidence from OSA that it won $29 million in Mexican government contracts in 2008 alone – hardly an indicator of an insolvent entity.

Cashman provides no authority for the dubious proposition that a debtor cannot invoke equity simply because he is a debtor. Again, the Court will not seek to plug the holes in the parties' arguments.

For the reasons set forth above, OSA's motions to vacate attachment are **granted**. The three attachments of the Equipment are **vacated**. The appointment of Core Industries, Inc. as substitute custodian, (Doc. 81), is **rescinded**.

Based on this ruling, Blake's motion to dismiss Adams' attachment, (Doc. 175), is **denied as moot**; Blake's motion to respond to demand for arbitration, (Doc. 225), is **denied as moot**; and Adams' motion for interlocutory sale, (Doc. 163), is **denied**.

DONE and ORDERED this 24th day of September, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE