# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| ADAMS OFFSHORE, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 09-0378-WS-B |
| | ) | |
| CON-DIVE, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on several motions filed by intervening plaintiffs Blake Marine Group ("Blake) and Cashman Equipment Corporation ("Cashman"). (Docs. 253, 255, 256, 267). Blake and defendant Oceanografia S.A. de C.V. ("OSA") have filed briefs in support of their respective positions, (Docs. 254, 264-66),[1] and the motions are ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that each of these motions is due to be denied.

## BACKGROUND

The history of this case and its predecessor has been adequately detailed in previous orders. In brief, OSA owns certain valuable diving equipment ("the Equipment") which was aboard a ship owned by McDermott Gulf Operating Company ("McDermott") that lay in Mexican waters. When McDermott refused to surrender the Equipment to OSA, OSA filed a criminal complaint, which triggered a government investigation. A Mexican district attorney boarded the vessel and ordered McDermott to

---

[1] Cashman merely "adopts and incorporates" Blake's argument. (Docs. 255, 267, 268).

[1]

transfer the Equipment to another vessel pending investigation. McDermott not only refused to comply with this lawful order but affirmatively prevented removal from being accomplished. McDermott did not challenge the order administratively or judicially but simply ignored it and sailed the vessel to Mobile in order to arrest and attach the Equipment here. On OSA's motion to vacate, the Court found these facts and ruled that they furnished grounds for an equitable vacatur of the attachment. *McDermott Gulf Operating Co. v. Con-Dive, LLC*, 2009 WL 1537871 at *3-6 (S.D. Ala. 2009).[2] The Eleventh Circuit affirmed, holding that the Court had power to vacate attachment on equitable grounds and did not abuse its discretion in doing so. *McDermott Gulf Operating Co. v. Con-Dive, LLC*, 371 Fed. Appx. 67 (11th Cir. 2010).

The Court's order vacating attachment was entered on May 29, 2009. Plaintiff Adams Offshore, Ltd. ("Adams") filed this action on June 25, 2009 and sought attachment of the Equipment. The Equipment was still in the district because McDermott's motion to stay the Court's vacatur order pending appeal was under consideration and the vacatur order was temporarily stayed pending resolution of the motion to stay. The Court issued Adams' requested order of maritime attachment on Friday, June 26 and its order denying McDermott's motion for stay pending appeal on Monday, June 29. The Marshal perfected the attachment the next day. Blake filed its complaint in intervention, including Rule B attachment, on July 14, and Cashman followed suit the next day.

The Court granted OSA's subsequent motions to vacate the attachments, all on identical grounds. The core of its reasoning follows.

> The salient facts are these: (1) OSA did not direct, or consent to, the Equipment's entry in this district; (2) on the contrary, OSA obtained a lawful Mexican order requiring that its property not be taken from Mexico

---

[2] The Court vacated the arrest of the Equipment because McDermott had no maritime lien. *Id*. at *6-7.

but relinquished to the authorities; (3) McDermott violated a direct government order by departing with the Equipment with the purpose of attaching it in this district; (4) the Equipment entered the district only because of this patently inequitable conduct; (5) the Plaintiffs were aware of the Equipment's presence in the district and thus were also necessarily aware of McDermott's lawsuit and this Court's order vacating the attachment as inequitable; and (6) the Plaintiffs attached the Equipment before OSA had any opportunity to remove the Equipment from the district.[3]

There are thus three parts to the equitable history of the attachments in this case. First, they were made possible only by the grossly inequitable conduct of McDermott. Second, neither the passage of time nor any other circumstance broke the causal connection between McDermott's inequitable conduct and the Plaintiffs' attachment.[4] Third, the Plaintiffs did not attach the Equipment in ignorance of its history but with full awareness that the Court had already condemned McDermott's attachment as inequitable.

Under these circumstances, the Plaintiffs' own conduct was itself an inequitable attempt to claim for themselves the benefit of McDermott's inequitable conduct. That is, they are not being held responsible for the inequitable conduct of McDermott but for their own inequitable conduct in deliberately seeking to profit by McDermott's known inequitable conduct. There is no meaningful difference between their position and that of one who knowingly receives stolen goods and then claims the right to keep the property because, after all, he was not the thief. No coherent scheme of equity justifies such a result, and the Plaintiffs suggest none.

(Doc. 229 at 3-4). Blake has appealed. (Doc. 252).

## DISCUSSION

---

[3] It required several weeks after Adams' attachment just to have the Equipment offloaded from McDermott's vessel. Here, the Court's order lifting the stay of the vacatur was entered at 3:36 p.m. on June 29, and the Marshal served the order of attachment at 10:35 a.m. the next morning.

[4] Had, for example, OSA allowed the Equipment to remain in the district for months after McDermott's attachment was vacated, its own lack of diligence in removing the Equipment might weaken or break the causal chain.

**I. Stay Pending Appeal.**

Blake first moves for a stay pending appeal. (Doc. 253 at 1). Such stays are governed by Rule 62. "In the case of a non-money judgment, whether a stay is warranted under Rule 62(d) depends upon: (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Venus Lines Agency v. CVG Industria Venelozana de Aluminio, C.A.*, 210 F.3d 1309, 1313 (11th Cir. 2000); *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (same test applies under Rule 62(c)). The parties agree that this is the correct test. (Doc. 254 at 3; Doc. 264 at 2-3). The burden as to each of these factors is on Blake, not OSA. *Drummond v. Fulton County*, 532 F.2d 1001, 1002 (5th Cir. 1976).

**A. Likelihood of Success on the Merits.**

Blake must make "a strong showing that [it] is likely to succeed on the merits" of its appeal. *Venus Lines*, 210 F.3d at 1313. This requires at least "a probable likelihood of success on the merits of the appeal." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986); *accord United States v. Hamilton*, 963 F.2d 322, 323 (11th Cir. 1992).[5] Whatever the precise threshold imposed by a "probable likelihood of success" standard,[6] it requires at least a better than even chance of overturning the district court's ruling. Blake can prevail with a lower showing of a "substantial case on the merits," but only if "the balance of the equities [reflected in the remaining three considerations] weighs

---

[5] *Garcia-Mir* and *Hamilton* were decided under Federal Rule of Appellate Procedure 8. "[T]he factors regulating the issuance of a stay are generally the same" under both Rule 62 and Rule 8. *Hilton*, 481 U.S. at 776.

[6] According to *Garcia-Mir*, it "requires that we determine that the trial court below was clearly erroneous." 781 F.2d at 1453.

heavily in favor of granting a stay." *Garcia-Mir*, 781 F.2d at 1453 (internal quotes omitted).

Blake's "principal issue" on appeal is that the Court vacated the attachments without conducting a Rule E hearing, in violation of Blake's due process rights. (Doc. 254 at 3). Neither that rule nor the Due Process Clause, however, affords Blake any right to a hearing.

By its terms, Rule E(4)(f) provides that "any person claiming an interest in" the attached property is entitled to a hearing, at which "the plaintiff must show why the … attachment should not be vacated." The 1985 advisory committee notes confirm that it is "the shipowner [who is entitled to] a prompt post-seizure hearing," and it is OSA, not Blake, that owns the Equipment. Moreover, the language of the rule clearly identifies "the plaintiff" as adversarial to the one "claiming an interest" in the property; since Blake is a plaintiff attaching the Equipment, it cannot be one claiming an interest in the Equipment for purposes of the rule.

Not only does the language of Rule E(4)(f) refute Blake's position, but also its purpose. Providing the owner of seized property a right to a hearing is required by due process precedent. *See Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969) (pre-judgment garnishment, without notice or opportunity to be heard, violated due process); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 606-07 (1975) (pre-judgment garnishment procedure was constitutionally infirm, in part because "[t]here is no provision for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment."). Both the advisory committee comments and Blake's single case confirm that the Rule E hearing provision exists to satisfy this due process requirement. It was inserted to protect property owners, not those seizing such property.

In short, Rule E provides Blake no right to a hearing. Blake has offered no coherent argument to the contrary.

In order to have any due process right at all, Blake must have a property interest in the Equipment. Blake has not even attempted to establish that it possesses such an interest. Its mere ipse dixit that it claims an interest in the Equipment, (Doc. 253 at 2), is no substitute for a clear assertion of a property interest, a reasoned explanation of its position, and case authority supporting it.

Even if Blake had a protectable property interest in the Equipment, due process does not inflexibly require a formal hearing before a judicial officer before that interest may be affected. "Certainly the Constitution does not require oral argument in all cases where only insubstantial or frivolous questions of law, or indeed even substantial ones, are raised." *Federal Communications Commission v. WJR, The Goodwill Station, Inc.*, 337 U.S. 265, 276 (1949). Thus, for example, in a proceeding awarding sanctions under 28 U.S.C. § 1927, "an opportunity to be heard does not require an oral or evidentiary hearing on the issue," and "[t]he opportunity to brief the issue fully satisfied due process requirements." *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000); *accord Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 335 (2nd Cir. 1999); *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 268 (10th Cir. 1995); *Childs v. State Farm Mutual Automobile Insurance Co.*, 29 F.3d 1018, 1027 (5th Cir. 1994). Blake has not asserted or remotely supported the proposition that due process demands it receive a hearing before its attachment is vacated, under the test laid down in *Matthews v. Eldridge*, 424 U.S. 319 (1976).

Even if due process otherwise could have required a hearing, Blake never requested one.[7] That omission amounts to a waiver of any right to a hearing that Blake

---

[7] Blake represents that it, and unspecified "other parties," made such a request. (Doc. 254 at 5). The Court, however, has scoured the plaintiffs' briefs and can find no request for a hearing. Buried in Blake's brief is the innocuous statement that "[t]he factual defenses asserted by OSA are beyond the scope of a Rule E hearing." (Doc. 210 at 7). Blake did not thereby demand such a hearing, and its introduction and conclusion are devoid of any mention of Rule E. Blake appears to be confusing its brief in opposition to OSA's motion to vacate with Blake's own motion to vacate Adams' attachment, which by its very style sought a Rule E hearing. (Continued)

might otherwise have possessed. *Grandison v. Smith*, 779 F.2d 637, 641 (11th Cir. 1986) ("Failure to request a hearing is deemed a waiver and the due process claim expires."); *In re: Rimsat, Ltd.*, 212 F.3d 1039, 1046 (7th Cir. 2000) ("Since a court is not invariably required to provide a hearing before imposing sanctions, the appellants' failure to request a hearing waives any right they might have had to one.").

In short, Blake has no property interest in its attachment, would not be entitled to a hearing even if it did, and waived any hearing it might otherwise have been entitled to receive. Blake was not wrongly deprived of a hearing required by the Due Process Clause.

As related above, Blake has demonstrated no chance of prevailing on its "principal issue," much less a probable likelihood of appellate success on the issue.

Blake next argues that it cannot be "bound" by the Mexican order because it was not in privity with McDermott. (Doc. 253 at 2; Doc. 254 at 3). This is a non-issue, because the Court did not rule that Blake is bound by the Mexican order. What the Court held is that it is inequitable for Blake to purposely profit by McDermott's inequitable conduct, knowing that conduct to have been judicially condemned as inequitable. Blake is not bound by the Mexican order but by its awareness that McDermott inequitably violated that order.[8] Blake, which does nothing more than announce its position, without

---

(Doc. 175). The Court, however, never reached Blake's motion, since the granting of OSA's motions to vacate mooted Blake's motion. (Doc. 229 at 5).

OSA moved for discretionary oral argument on its motions under Local Rule 7.3, (Docs. 222-24), but not for a hearing. Even had OSA requested a hearing, only OSA could complain of the Court's failure to conduct one, and OSA is not complaining.

[8] Blake's similar complaint that the Court allowed the Mexican order to bestow on the Equipment "de facto immunity" from attachment, (Doc. 253 at 2; Doc. 254 at 4), falls for the same reason.

offering argument or authority in support of it, has not come close to showing that it is likely to win reversal on this basis.[9]

Blake lists, without amplification, other arguments it might raise on appeal: that the Court should have considered imposing discovery sanctions on OSA before ruling on the motions to vacate; that the Court should have entered default and/or default judgment against OSA as a discovery sanction; and that vacating the attachment should have been precluded (by waiver, estoppel or some other, unarticulated doctrine) because OSA did not timely file a claim and answer. (Doc. 253 at 3; Doc. 254 at 4).

It is enough to say that Blake cannot meet its burden simply by throwing out sentence fragments naming possible appellate arguments; it must show that it is likely to succeed on those arguments and thereby win reversal of the Court's order vacating attachment. Blake refers the Court to its previous briefing, but this hurts rather than helps its position.

The only plaintiff to mention discovery issues in its briefing opposing OSA's motions to vacate was Adams. Its argument was limited to the proposition that OSA's alleged failure to engage in discovery was inequitable, such that the equities favored retaining the attachment. (Doc. 207 at 17-18). The two discovery arguments Blake articulates were not presented to the Court as grounds to deny OSA's motions, and Blake

---

[9] Blake does note in passing that the Court cited no authority in support of its conclusion that the plaintiffs acted inequitably in attaching the Equipment, and it concludes that this is apparently a case of first impression. (Doc. 253 at 2; Doc. 254 at 4). The question, however, is not whether the issue presented is interesting or novel but whether the Court's resolution of the issue is likely to be undone on appeal. Blake offers nothing to suggest that it will be.

It is also worth noting that the Court did cite the Eleventh Circuit's affirmance of its order vacating McDermott's attachment on equitable grounds. (Doc. 229 at 2). That appellate ruling established that the Court had power to vacate the attachment on equitable grounds not articulated in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 444 (2nd Cir. 2006), and that, under the circumstances presented, the Court did not abuse its discretion by doing so. These rulings suggest that the Eleventh Circuit would likely rule likewise here; certainly Blake has offered no argument or authority to the contrary, as its burden requires.

has failed to explain why the Court should assume the Eleventh Circuit would even entertain arguments that were not raised in opposition those motions. *See, e.g., Ledford v. Peeples*, 605 F.3d 871, 913 (11th Cir. 2010) ("It requires no citation to authority to say that, except when we invoke the 'plain error' doctrine, which rarely applies in civil cases, we do not consider arguments raised for the first time on appeal."); *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1304 (11th Cir. 2007) ("Arguments raised for the first time on appeal are not properly before this Court.") (internal quotes omitted).

Nor has Blake otherwise shown its discovery arguments to make much sense. As Blake would have it, the Court should have kept in place an inequitable attachment so that Blake could pursue discovery sanctions against OSA – up to and including default judgment. That is, Blake argues it can obtain indirectly, by Rule 37, what it cannot obtain directly. Blake does not explain why the plaintiffs should be allowed to profit by pursuing discovery sanctions against OSA in a lawsuit that is founded upon, and dependent upon, the plaintiffs' inequitable attachments of OSA's Equipment. *See generally R.H. Stearns v. United States*, 291 U.S. 54, 62 (1934) (recognizing "the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong"); *accord Daugette v. Patterson*, 250 F.2d 753, 757 (5th Cir. 1958). It would take a great deal more than Blake's ipse dixit to persuade the Court that the Eleventh Circuit is likely to buy such an argument.

The only party to raise waiver or estoppel in opposition to OSA's motions to vacate was Blake. Blake specified that this argument was directed towards OSA's affirmative defenses based on arbitration and forum-selection clauses. (Doc. 210 at 8). The balance of Blake's argument repeatedly confirmed – 16 times – that it was addressed to OSA's answer. (*Id*. at 8-10). While there was a stray reference to the motions to vacate, (*id*. at 9), Blake's brief immediately reverted to its focus on the answer. Blake's argument did not properly raise any challenge to the motions to vacate, much less to the specific ground accepted by the Court – that the attachments were inequitable. Again,

Blake does not explain why the Eleventh Circuit would even consider an issue Blake did not raise below.

Nor has Blake shown that the Eleventh Circuit, were it to consider the issue, would probably conclude the Court erred to reversal. Blake's skimpy argument in opposing the motion to vacate, citing only two district court cases from California and Wisconsin, simply said a court has discretion not to accept a late-filed answer if it raises new defenses that prejudice the plaintiff and that were deliberately withheld from earlier assertion. (Doc. 210 at 9-10). Blake's argument made no showing that Blake was prejudiced by OSA's tardy assertion of an inequitable attachment, and it did not even assert, much less establish, that OSA deliberately withheld the argument. By failing to make these showings, under Blake's own argument it failed to activate any discretion by the Court to ignore OSA's assertion of an inequitable attachment. The Court could not have abused a discretion the exercise of which was never triggered.

In summary, Blake has not shown a "probable likelihood of success on the merits" of its appeal. Nor has Blake shown a "substantial case on the merits," especially since it has not shown that the Eleventh Circuit would even reach the merits of several of its arguments. Even had the plaintiffs made such a showing, as discussed below the remaining three factors do not "weigh heavily in favor of granting a stay."

**B. Irreparable Injury.**

Blake's only assertion of irreparable harm is that, absent a stay, OSA will be free to take the Equipment out of the District, destroying jurisdiction. (Doc. 253 at 3; Doc. 254 at 5-6).

As this Court noted in *McDermott*, "[a] majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm." *McDermott Gulf Operating Co. v. Con-Dive, LLC*, 2009 WL 1855929 at *10 (S.D. Ala. 2009) (internal quotes omitted). Blake has not endeavored to show that the Eleventh Circuit would embrace the minority view.

"Certainly the fact that the decision on the stay may be dispositive of the appeal in some cases is a factor that an appellate court must consider, but that alone does not justify pretermitting an examination of the nature of the irreparable injury alleged and the particular harm that will befall the appellant should the stay not be granted." *Republic of the Philippines v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3rd Cir. 1991). That is, Blake cannot rely simply on the possibility or even the probability that the Equipment will leave the district during the appeal; instead it must show that, without the res, it will suffer irreparable injury. While Blake posits that it "runs the risk that it will be unable to collect any judgment against" OSA should the res leave the District, (Doc. 253 at 3), the Court has already held in *McDermott* that one such as Blake must show that OSA likely cannot or will not pay a judgment entered against it, not just express as ipse dixit an unexplained, unquantified "risk" of non-payment. 2009 WL 1855929 at *11.

Because Blake has shown no irreparable harm should a stay not be entered, this factor does not weigh heavily in favor of a stay and on the contrary weighs against it.

### C. Harm to OSA.

Blake says OSA will not be substantially injured if a stay is imposed, because the Equipment, in the safekeeping of a custodian, is subject to minimal threat of loss or damage. (Doc. 253 at 3; Doc. 254 at 6). Blake does not address other obvious components of continuing loss to OSA, including the deteriorating value of complex machinery idled for long periods of time, as well as lost profits from the employment of the Equipment. As the burden rests on Blake to show that OSA will not be substantially injured, its silence causes this factor to weigh against a stay.

### D. Public Interest.

Blake argues that the public interest lies in seeing that domestic companies such as itself receive due process of law. (Doc. 254 at 6). As discussed in Part I.A, Blake has not been wrongfully deprived of any due process rights. Blake also argues that the public

interest favors it because it will suffer more without a stay than OSA will suffer from a stay. (*Id.*). As shown in Parts I.B and I.C, Blake has not established that proposition. Neither has it shown that the public interest factor is redundant with the other factors. Because Blake has not effectively addressed this factor, it does not weigh in favor of a stay.

### E. Conclusion.

For the reasons set forth above, Blake's motion for a stay pending appeal is **denied**.

## II. Stay without Bond.

Although not mentioned in the style of its motion, Blake seeks leave to appeal without posting a supersedeas bond. (Doc. 253 at 1). Of course, no such bond could be required absent a stay, and Blake expressly makes its request for waiver of bond contingent on the Court's granting of a stay. (Doc. 253 at 1; Doc. 254 at 6; *id*. at 7; *id*. at 8). Because, as discussed in Part I, Blake has not shown itself to be entitled to a stay, its motion for leave to appeal without bond is **denied**.

## III. Stay Pending Application to the Eleventh Circuit.

The style of Blake's motion includes a motion for stay "pending application for emergency relief to the Eleventh Circuit U.S. Court of Appeals." (Doc. 253 at 1). The body of the motion reveals that Blake would seek from the Eleventh Circuit a stay of the vacatur order and appeal without posting bond, but neither the motion nor Blake's brief provides any explanation, authority or argument in support of its request. The Court will not create or support an argument on Blake's behalf. The motion is thus **denied**.[10]

---

[10] The Court notes that the Equipment is not easily movable and is unlikely to leave the District before Blake can seek a stay in the appellate court.

**IV. Stay with Bond.**

As a last resort, Blake seeks a stay of the vacatur pending appeal "based on filing of appropriate supersedeas bond" under Rule 62(d). (Doc. 256). The Eleventh Circuit has indicated that, by filing a supersedeas bond, an appellant may obtain a stay under Rule 62(d) "as a matter of right." *United States v. Wylie*, 730 F.2d 1401, 1402 n.2 (11th Cir. 1984). OSA points out that several courts of appeal have concluded this is true only with respect to money judgments. *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992) ("Courts have restricted the application of Rule 62(d)'s automatic stay to judgments for money because a bond may not adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment.") (citing cases from the Seventh and Ninth Circuits); *Titan Tire Corp. v. United Steelworkers of America, Local 890L*, 2010 WL 815557 at *1 (6th Cir. 2010). Blake does not address this objection in its reply.

In *Venus Lines*, the trial court vacated the plaintiff's attachment, stayed execution of the order pending appeal, and required the plaintiff to post an appeal bond. 210 F.3d at 1311, 1313. The Eleventh Circuit concluded that the stay order was "warranted under Rule 62(d)" and that the bond requirement likewise "falls squarely within Rule 62(d)." *Id.* at 1314. However, the trial court in *Venus Lines* did not grant the plaintiff a stay "as a matter of right" because it agreed to post bond but as a matter of discretion because it satisfied the four-factor test discussed in Part I. *Venus Lines* establishes that the test articulated by the Supreme Court in *Hilton* applies under Rule 62(d) as well as under Rule 62(c), but it does not suggest that an appellant not subject to a monetary judgment, and who cannot satisfy the *Hilton* test, may nonetheless automatically obtain a stay by posting bond.

Blake offers no explanation or authority as to why it should get two bites at the stay apple, and the Court concludes it may not. Blake's motion to approve requirements and/or amount of supersedeas bond to obtain stay on appeal, (Doc. 256), is **denied**.

**V.  Stay Pending Arrangements for Bond.**

Blake seeks a stay "to provide time to determine the amount of a bond requirement.  (Doc. 254 at 1; accord Doc. 256 at 2).  Because Blake is not entitled to a stay with or without a bond, and because the amount of such a bond thus need not be determined, this motion is **denied**.

**CONCLUSION**

For the reasons set forth above, the motions of Blake and Cashman, (Docs. 253, 255, 256, 267), are **denied**.  The stay imposed and extended by previous court orders, (Docs. 261, 269), is **lifted**.

DONE and ORDERED this 3rd day of November, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE